COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges Fulton and Ortiz

DAVID JOSHUA WOOD

MEMORANDUM OPINION[*] BY
v.      Record No. 1951-22-2         CHIEF JUDGE MARLA GRAFF DECKER
                                     MARCH 26, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
Paul W. Cella, Judge[1]

(M.G. Henkle; Henkle Law Firm, on brief), for appellant. Appellant
submitting on brief.

(Jason S. Miyares, Attorney General; William K. Hamilton, Assistant
Attorney General, on brief), for appellee.


David Joshua Wood appeals his convictions for driving while intoxicated (DWI) and driving

on a revoked license, in violation of Code §§ 18.2-266 and 46.2-391. He argues that the trial court

erroneously admitted a certificate of analysis to prove his level of intoxication. Wood further

contends that the evidence was insufficient to sustain his convictions. For the following reasons, we

affirm the trial court's judgment.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Joseph M. Teefey, Jr., presided over the trial in this case. Judge Paul W. Cella
presided over the sentencing hearing.

[2] Having examined the briefs and record in this case, the panel unanimously holds that
oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a). In addition, "the dispositive issue or issues have been
authoritatively decided," and the appellant "has not argued that the case law should be
overturned, extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND[3]

This appeal arises from an encounter that Wood had with police officers on February 14, 2022, as a result of a single-vehicle accident. At 8:43 p.m., Nottoway County Sheriff's Deputy Domanick Jenkins was the first police officer to arrive to the scene of the accident. He found that the car, a Taurus, had been driven off the road and into a ditch. The car was unoccupied, but Wood and his fiancée, Crystal Gray, were standing on the road near the vehicle. Jenkins's body-worn camera captured his investigation of the accident, and that video was entered into evidence. Deputy Jenkins asked how the vehicle ended up in the ditch, and Wood claimed that Gray "just went off the left side of the road." Jenkins asked who had been driving, and Wood repeatedly implicated Gray. Gray at first hesitated but ultimately identified Wood as the driver.

Wood maintained that he had consumed no alcohol that day. Jenkins accused Wood of lying. When Deputy Jenkins accused him of "wreck[ing] a vehicle," Wood did not respond. Jenkins discovered three cans of Four Loko—an alcoholic beverage—in the Taurus. Wood told Deputy Jenkins that he had crawled out the window of the vehicle after the accident. Jenkins noticed that the windows on the car were closed. When Deputy Jenkins asked him where he had been sitting, Wood responded, indicating that he was in the driver's seat, but then he immediately changed his answer to the passenger seat.

Virginia State Trooper Sean Williams arrived at the scene of the accident around 9:00 p.m. and spoke with Wood, who again claimed that Gray had been driving. Williams detected an odor of alcohol on Wood's person and noted Wood's slurred speech. He observed that Wood's eyes were

---

[3] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires this Court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

red and irritated and that he had trouble maintaining his balance. Although Wood continued to deny that he had driven the Taurus, he told Trooper Williams that he had crawled out of the window. Williams, however, confirmed that the windows were closed.

Wood again denied consuming any alcohol that night and agreed to perform three field sobriety tests for Trooper Williams. After the tests, Williams arrested Wood at 9:23 p.m.

Trooper Williams then transported Wood to the Nottoway County Sheriff's Office. Once there, Williams administered a breath test. The results of the breath test indicated that Wood's blood alcohol content (BAC) was .23 grams per 210 liters of breath.

Afterward, Williams took Wood to the magistrate's office. En route, Trooper Williams stopped to refuel his police car. While the trooper refueled, Wood retrieved his mobile phone and made a call. Wood informed the other party to the phone call that he needed a favor and asked that person to claim to be the driver. This phone conversation was captured by the trooper's recording device that he left in the center console area of the car.

At Wood's ensuing bench trial, Gray testified that on the day of the wreck, she spent most of the day with Wood. Sometime after 5:00 p.m., Wood left her apartment in their shared 2005 Ford Taurus. At around 8:30 p.m., Wood returned to Gray's apartment—on foot—and informed her that he needed a tow because the car was in a ditch. The pair walked to the site of the wreck, which took about five minutes. Wood asked Gray to say that she was driving at the time of the wreck. Gray acknowledged that she did not actually see Wood leave her apartment complex in the Taurus. She further conceded that she thought she had the keys to the car in her possession when Deputy Jenkins arrived at the scene, but she could not remember exactly how she had obtained them.

Jessica Lester also testified against Wood. At around 6:40 p.m. on the evening of the wreck, Lester was driving her car when another vehicle "came and . . . cut straight in front of" her. The vehicle did not hesitate or brake, and it forced Lester to "speed up and go over almost . . . into the

- 3 -

curb" to avoid a collision. Lester followed the vehicle while she videorecorded its erratic movements. She testified that the driver was a man. Lester's recordings captured images of the vehicle and its license plate. At trial, Lester was unable to affirmatively identify Wood as the driver because it had "been a while" and instead stated only that Wood's face was "familiar."

The Commonwealth introduced into evidence the BAC certificate of analysis. Wood objected, arguing that the document did not comply with the implied consent law because the Commonwealth failed to establish that Trooper Williams took the breath sample within three hours of the driving behavior. The trial court found that the evidence supported the timeline, overruled Wood's objection, and admitted the certificate of analysis.

After the close of the evidence, Wood made a motion to strike. He argued that the Commonwealth failed to establish the time of the accident or the identity of the driver. He contended that the only evidence of his involvement consisted of his own statement that he crawled out the passenger window after the accident. The trial court denied the motion.

The court convicted Wood of DWI, with a prior felony conviction for driving under the influence and with a BAC greater than .20, in violation of Code § 18.2-266. Wood was also convicted of driving on a revoked license while endangering the life or limb of another, in violation of Code § 46.2-391(D)(2). He was sentenced to a total of ten years of incarceration with seven years suspended.

ANALYSIS

On appeal, Wood challenges the admission of the certificate of analysis and the sufficiency of the evidence proving his identity as the driver of the wrecked car.

I. Admission of the Certificate of Analysis

Wood argues that the trial court erred in admitting the certificate of analysis because the Commonwealth did not establish that any driving behavior occurred within three hours of Wood's arrest at 9:23 p.m.[4] We disagree.

"It is well-settled that '[d]ecisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."'" *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (alteration in original) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). "An abuse of discretion does not occur if reasonable jurists could differ." *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021). "This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial." *Commonwealth v. Barney*, ___ Va. ___, ___ (Mar. 16, 2023) (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). The "burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance" of the evidence. *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019) (quoting *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001)).

---

[4] The Commonwealth suggests that this assignment of error is not preserved because Wood initially objected under the wrong standard. *See generally* Rule 5A:18 (providing that an objection must be "stated with reasonable certainty"). However, the prosecutor responded with the correct standard. The trial court had the appropriate standard when ruling, and therefore we consider this issue preserved. *See generally Bethea v. Commonwealth*, 297 Va. 730, 743-44 (2019) (stating that the rule "enable[s] the trial judge to rule intelligently" on the issue (quoting *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 579 (2017))).

Under Virginia's implied consent law, a person who "operates a motor vehicle upon a highway" of the Commonwealth impliedly consents to give breath and blood samples for testing if arrested for driving while intoxicated "within three hours of the alleged offense." Code § 18.2-268.2(A). A certificate of analysis is not admissible unless the Commonwealth has complied with the requirements of the implied consent law. *Roseborough v. Commonwealth*, 281 Va. 233, 238-39 (2011). Here, to be admissible, the Commonwealth had to present evidence that Wood was operating a motor vehicle on a public highway and was validly arrested for an offense under Code § 18.2-266 within three hours of the alleged offense. *See id.*

Wood did not argue in the trial court, and does not argue to this Court, that Williams lacked probable cause to arrest him for DWI. Consequently, we do not consider the lawfulness of the arrest and consider only whether the trial court abused its discretion when it determined that Wood operated the vehicle within three hours of his arrest. *See Commonwealth v. Hill*, 264 Va. 541, 546 (2002) (restricting the analysis to a reasonable force determination where the Commonwealth failed to challenge the trial court's ruling that the detention was unlawful).

Williams arrested Wood at 9:23 p.m. Accordingly, for the certificate to be admissible, the Commonwealth had to prove by a preponderance of the evidence that Wood operated the vehicle after 6:23 p.m. *See Roseborough*, 281 Va. at 238-39. Wood argues that the only evidence of his operation during the relevant period is Lester's "unsupported, uncorroborated, and obviously vague testimony."

Lester testified that she encountered the Taurus at around 6:40 p.m. The accident must have occurred after 6:40 p.m. because the Taurus was not yet in the ditch. Other evidence placed Wood behind the wheel of the vehicle at the time of the accident. Gray testified that Wood left her apartment in the Taurus sometime after 5:00 p.m. Wood returned to Gray's residence around

8:30 p.m. in need of a tow truck. Wood admitted to Trooper Williams that he was in the driver's seat of the vehicle at the time of the wreck.

The record supports the trial court's finding that Wood operated the car after 6:23 p.m., within three hours of his arrest. Therefore, the trial court did not err when it admitted the certificate.[5]

## II. Sufficiency of the Evidence

Wood contends that the trial court erred in denying his challenge to the sufficiency of the evidence because the Commonwealth did not establish that he was the person who drove the Taurus. He does not challenge any other elements of the offenses.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*,

---

[5] In light of this holding, we do not address whether the alleged error was harmless because Trooper Williams testified, without objection, about the results of the breath test. *See generally Blackman v. Commonwealth*, 45 Va. App. 633, 639 n.1 (2005) (noting that the affirmance of the appeal on the merits rendered analysis of the Commonwealth's harmless error argument unnecessary).

69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). Based on these principles, we defer to the trial court's interpretation of the evidence, including video evidence. *See Meade*, 74 Va. App. at 805-06.

Appellate review of whether the Commonwealth presented adequate evidence to support its case "does not distinguish between direct and circumstantial evidence." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Wood argues that the Commonwealth failed to prove that he had operated the motor vehicle, an essential element for each of his two convictions. *See* Code § 18.2-266 (driving while intoxicated); Code § 46.2-391 (driving with a revoked license). He specifically challenges the weight of Lester's identification testimony.

We do not view Lester's testimony in isolation but instead in context of the record as a whole. The record contains sufficient evidence to support the trial court's finding that Wood was the person who drove the Taurus into the ditch. Gray's testimony placed Wood in the vehicle after 5:00 p.m. At 6:40 p.m., Lester saw the Taurus driving erratically. At approximately 8:30 p.m., Wood informed Gray that he needed a tow truck because the car was in a ditch.

Wood attempted to induce Gray to take responsibility for the accident. He repeatedly maintained to the investigating police officers that Gray was driving when the accident occurred, not him. Wood briefly admitted, however, that he was in the driver's seat when the accident occurred. Contrary to his repeated claims that Gray was the driver, Gray testified that Wood took the car and returned to her apartment on foot because the car was in a ditch. The trial court, as the

- 8 -

fact finder, was entitled to accept Gray's testimony as credible and disbelieve Wood's self-serving statements that he was not the driver. *See, e.g.*, *Dalton v. Commonwealth*, 64 Va. App. 512, 525-26 (2015); *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011). Along with claiming Gray was the driver, Wood said that he did not drink any alcohol at any time that day, despite testing well over the legal limit for alcohol consumption. The trial court could treat Wood's prevarications as affirmative evidence of guilt. *See Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008).

On this record, a rational finder of fact was permitted to determine that Wood drove the Taurus into the ditch, attempted to persuade Gray to take the blame, and lied when she did not do so. Based on this record, we hold that the trial court did not err when it found the evidence sufficient to convict him of driving while intoxicated under Code § 18.2-266 and driving with a revoked license under Code § 46.2-391.

CONCLUSION

We hold that the trial court did not err by admitting the certificate of analysis showing the appellant's blood-alcohol content. In addition, we reject his challenge to the sufficiency of the evidence because the Commonwealth adequately proved that he was the driver of the vehicle. Accordingly, we affirm the convictions.

*Affirmed.*